An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-194
NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

STATE OF NORTH CAROLINA

v.

GEORGE DAVID JOLLY

Guilford County
Nos. 12 CRS 24828,92661


Appeal by defendant from judgment entered 6 June 2013 by Judge Ronald E. Spivey in Guilford County Superior Court.  Heard in the Court of Appeals 4 June 2014.

>    *Attorney General Roy Cooper, by Assistant Attorney General Lisa K. Bradley, for the State.*
>
>    *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Jillian C. Katz, for defendant-appellant.*

McCULLOUGH, Judge.

Defendant appeals from judgment entered upon a jury verdict finding him guilty of assault with a deadly weapon inflicting serious injury and his guilty plea to attaining the status of an habitual felon.  For the following reasons, we find no prejudicial error.

I. Background

As a result of an altercation on 19 October 2012, on 10 December 2012, a Guilford County Grand Jury returned indictments against defendant for assault with a deadly weapon inflicting serious injury and attaining the status of an habitual felon. Following a pretrial hearing on 3 June 2013, defendant's case was called for jury trial in Guilford County Superior Court on 4 June 2013, the Honorable Ronald E. Spivey, Judge presiding.

The evidence presented at trial tended to show that defendant was present at a residence shared by Richard Roscoe and Philip Culbreth at 1523 North O'Henry Boulevard on the evening of 19 October 2012. Roscoe and Culbreth testified that defendant showed up unannounced while they were playing video games and drinking. They claim defendant was intoxicated when he arrived and became belligerent and started to argue with Roscoe when he lost a video game. Defendant, on the other hand, testified that he spoke with Roscoe and arranged to do laundry at the residence, which was not unusual given that Roscoe allowed defendant to store a washer and dryer, as well as other miscellaneous items, at the residence. Defendant claims that while he was doing laundry, Roscoe accused him of taking liquor and they began to argue. Despite the differing accounts, it is

undisputed that defendant got into an argument with Roscoe. As a result of that argument, Culbreth called the police.

By the time the police arrived, defendant had left the residence. Defendant, however, returned shortly after the police left to retrieve his belongings. Defendant's wife and daughter returned with defendant but remained in the car parked in front of the residence while defendant entered the house.

Upon defendant's return, the argument between defendant and Roscoe resumed and quickly escalated into a physical altercation, during which defendant cut Culbreth across the abdomen with a box cutter. Roscoe and Culbreth testified that defendant was not provoked and defendant was the aggressor in the altercation. Defendant, however, testified that he cut Culbreth in self-defense after Roscoe and Culbreth attacked him. Testimony from defendant's daughter, who witnessed the altercation through the glass front door from the rear seat of the car parked in front of the house, corroborated defendant's testimony. Defendant's wife, who had the better view from the front seat of the car, was not called as a witness at trial.

During the altercation, Roscoe escaped the residence and called police from a neighbor's house. Roscoe returned shortly thereafter as police were arriving at the scene. Together, they

found Culbreth in the backyard with a serious wound to his abdomen. Defendant had fled the house. Yet, defendant later turned himself in on 22 October 2012 after spending several days in Asheboro to avoid the police.

On 5 June 2013, the jury returned a verdict finding defendant guilty of assault with a deadly weapon inflicting serious injury. Defendant then pled guilty to attaining the status of an habitual felon and the trial court entered judgment on 6 June 2013 sentencing defendant to a term of 77 to 105 months imprisonment and ordering the payment of restitution. Defendant gave notice of appeal in open court.

## II. Discussion

The sole issue raised on appeal is whether the trial court erred by failing to intervene *ex mero motu* during the State's closing argument when the State mentioned defendant's failure to produce his wife as a witness. Yet, before reaching the merits of the appeal, we address whether the issue was preserved for review.

In the portion of the State's closing argument at issue, the State attempted to cast doubt on defendant's self-defense argument by emphasizing the inconsistencies between a written

statement he provided to police and the testimony he provided at trial.  Specifically, the State argued the following:

> And he'll say, you know what.  Well, my wife, helped me write this and helped me write that, and that's why I wrote it. Well, you know what.  His wife is here, and if that was the case, you could always call her and have her get up on the stand and let us know that.  But she's here.  And if you recall, [defendant's daughter] said, you know, look, I'm in the back seat, and mom's up in the front, you know.  She had a better vantage point than I did.  She can see it better.  Well, she's here, and she ain't testified.
>
> So you can make your own inference about that, if she supposedly saw this incident and the way it happened.  Here you are facing a felony, facing this potential of jail time.  And then I've got my wife, who's seated in the front seat, who supposedly had the best view of what has taken place this night.  And I'm sitting here before a jury of 12.  And I'm not going to call her.  So you have to decide why that decision was made.  Of course, I'd argue to you, because the facts as they're giving them to you is [sic] not true.

Defendant did not object to the State's argument and the trial court did not intervene.

Generally, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific

grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2014).

In the present case, defendant made no such request, objection, or motion during the State's closing argument. Defendant, however, citing *State v. Braxton*, 352 N.C. 158, 177, 531 S.E.2d 428, 439 (2000) and *State v. Lawrence*, 352 N.C. 1, 13, 530 S.E.2d 807, 815 (2000), contends his right to appeal was preserved because the trial court acted contrary to a statutory mandate. In response, the State contends that defendant failed to preserve the issue for appeal.

Upon review, we find the statute at issue in this case, N.C. Gen. Stat. § 8-57(a), distinguishable from N.C. Gen. Stat. § 15A-1214, the jury selection statute at issue in *Braxton* and *Lawrence*. Unlike N.C. Gen. Stat. § 15A-1214, N.C. Gen. Stat. § 8-57(a) does not direct the court to do anything in particular; it simply directs that "the failure of the defendant to call [a] spouse as a witness shall not be used against him." N.C. Gen. Stat. § 8-57(a) (2013). Thus, we distinguish the present case from *Braxton* and *Lawrence*.

Nevertheless, we reach the merits of defendant's appeal. This Court has long addressed arguments that the trial court

erred by failing to intervene in closing arguments *ex mero motu*.

As stated by our Supreme Court,

> [t]he standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted).

In full, N.C. Gen. Stat. § 8-57(a) provides, "[t]he spouse of the defendant shall be a competent witness for the defendant in all criminal actions, *but the failure of the defendant to call such spouse as a witness shall not be used against him.* Such spouse is subject to cross-examination as are other witnesses." (Emphasis added).

Upon review of the record in this case, we hold the State's comments during closing arguments regarding defendant's failure to call his wife as a witness were improper under N.C. Gen. Stat. § 8-57(a). Yet, given the evidence against defendant, we

find a different result is unlikely absent the comments and therefore hold defendant is not entitled to a new trial.

In support of his contention that the trial court failed to intervene *ex mero motu*, defendant cites two 1976 decisions by our Supreme Court, *State v. McCall*, 289 N.C. 570, 223 S.E.2d 334 (1976) and *State v. Thompson*, 290 N.C. 431, 226 S.E.2d 487 (1976), and argues for the same result in the present case.

In *McCall*, our Supreme Court granted the defendant a new trial where the prosecution commented on the fact that the defendant's wife did not testify. *McCall*, 289 N.C. at 577-78, 223 S.E.2d at 338. The Court reasoned,

> [t]he provisions of [N.C. Gen. Stat. §] 8-57, and decisions of this Court interpreting and applying them, impel the conclusion that where evidence is rendered incompetent by statute, it is the duty of the trial judge to exclude it, and his failure to do so is reversible error, whether objection is interposed and exception noted or not. In such case it is the duty of the judge to act on his own motion. The rule applies with equal force to the argument of counsel when evidence forbidden by statute is argumentatively placed before the jury and used to the prejudice of the defense. When this occurs it is the duty of the judge *ex mero motu* to intervene and promptly instruct the jury that the wife's failure to testify and the improper argument concerning that fact must be disregarded and under no circumstances used to the prejudice of the defendant.

*Id*. (Citations omitted).

Similarly, in *Thompson*, the Court granted the defendant a new trial where the prosecution commented on the defendant's failure to call his wife to provide an alibi. *Thompson*, 290 N.C. at 446-47, 226 S.E.2d at 496-97. Relying on its decision in *McCall*, the Court noted the prosecution's comment "violate[d] both the letter and the spirit of [N.C. Gen. Stat.] § 8-57." *Id.* at 447, 226 S.E.2d at 497. The Court then pointed out that the primary error was not the judge's, but the prosecution's "flagrant disregard of a mandatory rule which has been well-known statutory law in this State for over a hundred years." *Id.* at 448, 226 S.E.2d at 497.

> By highlighting to the jury the fact that she was not a witness, the district attorney, in violation of [N.C. Gen. Stat.] § 8—57, used the failure of the wife to testify for her husband to the prejudice of defendant. Notwithstanding the failure of the defendant's counsel to object to the argument it was incumbent upon the trial judge, on his own initiative, to intervene and to instruct the jury to disregard the solicitor's argument.

*Id.* at 447-48, 226 S.E.2d at 497.

However, as our Supreme Court recognized in *State v. Barden*, 356 N.C. 316, 381, 572 S.E.2d 108, 149 (2002), the year after the *McCall* and *Thompson* decisions were announced, N.C. Gen. Stat. § 15A-1443 was enacted. "Pursuant to N.C. Gen. Stat. § 15A—1443(a), defendant has the burden of showing there is a

reasonable possibility that a different result would have been reached at trial had the trial court's error not occurred." *State v. Peterson*, 179 N.C. App. 437, 470, 634 S.E.2d 594, 618 (2006). Specifically, the statute provides in pertinent part:

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C. Gen. Stat. § 15A-1443(a) (2013).

Although defendant does not address N.C. Gen. Stat. § 15A-1443 directly, defendant does make a prejudice argument. Defendant contends the State's argument was "undoubtedly calculated to show that [defendant] was lying as to the ultimate question of who was the aggressor" and "was the last thing the jury heard prior to the jury instructions, where they were asked to decide if [defendant] acted in self-defense or if he cut Mr. Culbreth with no justification for his actions." While this may be, considering all the evidence in the record, we are not convinced that there is a reasonable possibility that a different result would have been reached absent the improper comments during the State's closing argument. Therefore, we hold defendant has failed to meet his burden to show prejudice

and the State's closing argument, although improper, does not warrant a new trial.

## III. Conclusion

For the reasons discussed above, we find no prejudicial error warranting a new trial.

No prejudicial error.

Judges STEPHENS and STROUD concur.

Report per Rule 30(e).